FILED

FEB 12 2016

Clerk, U.S. District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| JOHNA KOONTZ,<br><br>Plaintiff,<br><br>vs.<br><br>BANK OF AMERICA, N.A., successor by merger to BAC HOME LOANS SERVICING, LP, f/k/a COUNTRYWIDE HOME LOANS SERVICING, LP and COUNTRYWIDE BANK, N.A.; and RESIDENTIAL CREDIT SOLUTIONS, INC., ,<br><br>Defendants. | CV 15–108–M–DLC<br><br>ORDER |

Before the Court is a motion to dismiss filed by Defendant Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP, f/k/a Countrywide Home Loans Servicing, LP and Countrywide Bank, N.A. (hereinafter "BANA"). For the reasons explained below, the Court denies the motion.

## BACKGROUND

For purposes of BANA's motion to dismiss, "[a]ll factual allegations set forth in the [Amended Complaint] are taken as true and construed in the light most

-1-

favorable to [Plaintiff]." *Lee v. City of Los Angeles*, 250 F.3d 668, 679 (9th Cir. 2001). The Court recounts the factual allegations in the Amended Complaint only as they pertain to BANA.

As has become a familiar set of facts in the wake of the financial crisis of 2008 and 2009, this case stems from allegations of mishandling and illegal practices in the servicing of a home mortgage loan. On May 26, 2005, Plaintiff Johna Koontz ("Koontz") obtained a mortgage loan from Mountain West Bank, N.A., secured against her residence in Missoula, Montana. From the outset, BANA's predecessor Countrywide Home Loans Servicing LP ("Countrywide") serviced Koontz's loan on Mountain West Bank's behalf. After closing her small business in late 2008, Koontz missed her first monthly payment on the loan in February 2009. Thereafter, Koontz learned of the Home Affordable Modification Program ("HAMP"), and applied for a loan modification through Countrywide. Koontz alleges that Countrywide representatives indicated she would only qualify for the modification if she was three months behind on her payments, and that she purposefully missed a third payment accordingly. She then submitted her application and the necessary supporting documents, but was continually placated and made no progress in the application process.

By the end of April 2009, Koontz began receiving her monthly mortgage

statements from BANA, which had acquired Countrywide in 2008. BANA informed her that she would need to start the HAMP application process anew, and Koontz complied by sending in paperwork whenever requested. Koontz claims to have spoken to over forty-five different BANA representatives between April 2009 and December 2012. Koontz received various conflicting and confusing statements during many of these contacts, including that: (a) BANA had begun reviewing her application, (b) BANA could not review her application due to her failure to submit necessary documentation, (c) BANA could not modify her loan, (d) BANA was unable to locate her file, (e) she should continue making payments, (f) she should cease making payments, and (g) her income was insufficient to qualify her for a modification. Moreover, BANA initiated foreclosure of Koontz's loan by filing three separate notices of trustee sale in September 2010, March 2012, and August 2012.

Prior to the scheduled March 2012 trustee sale, Koontz, with the assistance of a foreclosure intervention counselor, submitted a qualified written request ("QWR") to BANA seeking information regarding the status of her HAMP application, then three years in the making. Koontz received a confrontational response from an attorney purporting to represent BANA, in which the attorney accused her of seeking proprietary information and failing to follow QWR

protocol. The attorney did not provide Koontz with the information she requested. Then, in September 2012, Koontz received a letter from Defendant Residential Credit Solutions ("RCS") indicating that it had assumed servicing her loan. BANA confirmed the transfer of servicing in a letter dated November 27, 2012, and the transfer became effective December 16, 2012. As a result, Koontz was again required to begin the HAMP application process from scratch.

Following similar confusing and contradictory actions on the part of RCS from December 2012 through June 2015 – including RCS scheduling another foreclosure sale for August 2015 – Koontz filed this action in the Montana Fourth Judicial District Court, Missoula County, on July 23, 2015. BANA removed the case to this Court on the basis of diversity jurisdiction on August 21, 2015. Koontz then filed her Amended Complaint on September 18, 2015. In it, she asserts the following claims against BANA specifically: (1) negligence, (2) negligent misrepresentation, (3) violation of the Montana Consumer Protection Act ("CPA")[1], (4) breach of contract, (5) breach of the covenant of good faith and fair dealing, (6) fraud, and (7) punitive damages. BANA filed the instant motion to dismiss in October 2015, and this case is scheduled for trial before a jury in February 2017.

---

1. Mont. Code Ann. § 30-14-101 et seq.

## LEGAL STANDARD

Rule 12(b)(6) motions test the legal sufficiency of a pleading. Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 8 "does not require detailed factual allegations, but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations and quotations omitted). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim has facial plausibility when the court can draw a "reasonable inference" from the facts alleged that the defendant is liable for the misconduct alleged. *Id.* On a Rule 12(b)(6) motion to dismiss, the court must accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party. *Kneivel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005).

## DISCUSSION

BANA moves to dismiss all of Koontz's claims on the following grounds: (I) Koontz's negligence, negligent misrepresentation, CPA, and fraud claims are time-barred; (II) to the extent her breach of the covenant of good faith and fair

dealing claim sounds in tort, it too is time-barred; (III) Koontz fails to state a breach of contract claim; (IV) she fails to plead her fraud claim with the required particularity; and (V) having failed to state a tort claim, Koontz's punitive damages claim fails. At this stage in the litigation and mindful of the Court's obligation with regard to finding facts, the Court denies BANA's motion as to each of these grounds.

## I.     Counts I, II, III, and VI

BANA contends that Koontz's negligence, negligent misrepresentation, CPA, and fraud claims are time-barred because BANA's last alleged act which could form the basis of any of the claims occurred in June 2012, a three year limitations period governs the first two of these claims, and a two year period governs the latter two. Koontz filed this action in state court in July 2015, outside any of the applicable periods, according to BANA. Koontz counters that the discovery rule tolled the statute of limitations on these claims, making them timely.

"[T]he fact that a party does not know that he or she has a claim, whether because he or she is unaware of the facts or unaware of his or her legal rights, is usually not sufficient to delay the beginning of the limitations period." *Christian v. Atl. Richfield Co.*, 358 P.3d 131, 152 (Mont. 2015) (citing Mont. Code Ann.

§ 27-2-102(2)). However, Montana's discovery rule provides that "[t]he period of limitation does not begin on any claim or cause of action for an injury to person or property until the facts constituting the claim have been discovered or, in the exercise of due diligence, should have been discovered by the injured party if: (a) the facts constituting the claim are by their nature concealed or self-concealing; or (b) before, during, or after the act causing the injury, the defendant has taken action which prevents the injured party from discovering the injury or its cause." § 27-2-102(3). "[T]he nondisclosure of information," as well "[a]n injury that is not apparent to the layperson because of its complexity, and which can ultimately only be discovered by professional analysis," are circumstances which may constitute self-concealing facts and injuries. *Christian*, 358 P.3d at 153. "[W]hether the facts constituting the claim were concealed or self-concealing, whether the defendant acted to prevent discovery of those facts, or whether the plaintiff exercised due diligence" are questions of fact. *Id.* (citing *Johnston v. Centennial Log Homes & Furnishings, Inc.*, 305 P.3d 781, 790 (Mont. 2013)).

Koontz argues that the discovery rule applies to the facts underlying her negligence, negligent misrepresentation, CPA, and fraud claims because, while she was obviously aware of BANA's actions during the period in which she sought a loan modification from the bank, she did not become aware that those

actions constituted unlawful conduct "until January of 2015, when she sought legal advice after seeing a newspaper article about another Montana couple suing [BANA] for illegal loan servicing practices." (Doc. 17 at 18.) Instead, Koontz states that she believed her protracted modification application process was either par for the course or in some way her own fault. Her contentions present fact questions regarding BANA's nondisclosure of information and the complexity of the modification process, *Christian*, 358 P.3d at 153, and are therefore sufficient under Montana law to move her negligence, negligent misrepresentation, CPA, and fraud claims past BANA's motion to dismiss. BANA's motion is denied as to these claims.

## II. Count V

BANA's motion to dismiss Count V applies to the extent Koontz alleges *tortious* breach of the covenant of good faith and fair dealing, to which a three-year statute of limitations applies. However, BANA acknowledges that an eight-year limitations period applies to claims for contractual breach of the covenant of good faith and fair dealing, and Koontz confirms the contractual basis of her claim. Indeed, the Amended Complaint states that BANA's breach "aris[es] from its contract" with Koontz. (Doc. 7 at 32.) The Court therefore denies BANA's motion to dismiss Count V on statute of limitations grounds.

### III. Count IV

BANA next seeks dismissal of Koontz's breach of contract claim, arguing that Koontz fails to state a claim because her Amended Complaint does not contain specific facts regarding the home inspections which she claims violated provisions in her Deed of Trust. Koontz counters that Section 7 of the Deed of Trust provided for "*reasonable* entries upon and inspections of the property," (Doc. 7 at 3 (emphasis added)), and that BANA's repeated inspections of her home – and concomitant charging fees for those inspections – were unreasonable. Koontz states a plausible claim for breach of this particular contractual provision, sufficient to put BANA on notice of the nature of the violations she alleges. Furthermore, to decide the motion to dismiss this claim in BANA's favor would require the Court's resolution of whether BANA's inspections were reasonable. The Court may not make this factual determination at this time, and BANA's motion to dismiss Koontz's breach of contract claim is denied.

### IV. Count VI

BANA moves to dismiss Koontz's fraud claim on the basis that she fails to plead the claim with the requisite particularity. Koontz counters by referencing the twenty-six page factual account of her multi-year attempt to obtain a loan modification, and her application of those facts to the elements of a fraud claim,

both in her Amended Complaint. Koontz's pleading clearly and specifically states a fraud claim, and BANA's motion to dismiss Count VI will be denied accordingly.

A valid fraud claim consists of the following elements, pled with particularity: "(1) a representation; (2) the falsity of that representation; (3) the materiality of the representation; (4) the speaker's knowledge of the representation's falsity or ignorance of its truth; (5) the speaker's intent that the representation should be acted upon by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the representation's falsity; (7) the hearer's reliance upon the truth of the representation; (8) the hearer's right to rely upon the representation; and (9) the hearer's consequent and proximate injury or damages caused by their reliance on the representation." *Town of Geraldine v. Mont. Mun. Ins. Auth.*, 198 P.3d 796, 801 (Mont. 2008) (citations omitted).

Rule 9(b) of the Federal Rules of Civil Procedure requires a party pleading fraud-based claims to "state with particularity the circumstances constituting fraud." Rule 9(b) requires that fraud-based allegations "be specific enough to give defendants notice of the particular misconduct so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (citations, internal quotation

marks, and alterations omitted). "Averments of fraud must be accompanied by the who, what, when, where, and how of the misconduct charged." *Id.* (citations and internal quotation marks omitted). However, Rule 9(b) does not supplant the general pleading requirements expressed in Rule 8(a) – rather, "the two rules must be read in conjunction with each other . . . tak[ing] account of the general simplicity and flexibility contemplated by the" rules as a whole. 5A Charles Alan Wright et al., *Federal Practice and Procedure* § 1298 (3d ed. 2005).

Contrary to BANA's argument, Koontz provides the who, what, when, where, and how regarding her fraud claim in her Amended Complaint. Koontz lists the BANA employees with whom she spoke over the four years BANA serviced her loan. She details the representations those employees made to her regarding the HAMP process, her application in particular, and various actions she either needed to take or refrain from taking. Specifically, she alleges that BANA employees informed her that her application was being processed and/or that she needed to submit more documentation, despite those employees knowing neither was true and intending that the representations would placate her. Koontz alleges that she relied on the BANA employees' representations by, among other things, purposely skipping monthly mortgage payments. These allegations are sufficient to put BANA on notice of their alleged misconduct, and sufficient to permit

-11-

BANA to mount a defense. Accordingly, the motion to dismiss Koontz's fraud claim is denied.

## V. Count VII failing to state a claim.

Finally, BANA moves for dismissal of Koontz's punitive damages claim on the grounds that it cannot stand absent viable tort claims. Based on the foregoing, Koontz's tort claims remain in play; so too, then, does her punitive damages claim.

Accordingly, IT IS ORDERED that Defendant Bank of America, N.A.'s motion to dismiss (Doc. 9) is DENIED.

DATED this 12th day of February, 2016.

Dana L. Christensen, Chief Judge
United States District Court